1   **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9   David Wayne Kiehle,                    )   No. CV-11-352-PHX-GMS
                                           )
10             Plaintiff,                   )   **ORDER**
                                           )
11  vs.                                    )
                                           )
12                                          )
    Charles L. Ryan, et al.,               )
13                                          )
               Defendants.                 )
14                                          )
                                           )
15  ────────────────────────────────────────

16          Pending before this Court is a Petition for Writ of Habeas Corpus filed by Petitioner

17  David Wayne Kiehle. (Doc. 1). Magistrate Judge Burns has issued a Report and

18  Recommendation ("R & R") in which she recommended that the Court deny the petition with

19  prejudice. (Doc. 19). Petitioner has objected to the R & R and has filed supplemental

20  objections as well. (Docs. 24, 26). Because objections have been filed, the Court will review

21  the petition de novo. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)

22  (en banc). In addition, Petitioner has filed a "Motion to Cause Respondents to Serve Answer

23  Pleading on Petitioner." (Doc. 21). For the following reasons, the Court accepts in part and

24  denies in part the R & R, denies the petition, and denies Petitioner's motion as moot. The

25  Court does grant Petitioner a Certificate of Appealability on one issue, as discussed below.

26                              **BACKGROUND**

27          The facts of the investigation are ably put forth in the R & R and are only briefly

28  summarized here. On July 6, 1998, Petitioner called 911 at 4:45 a.m. to report that he had

found his wife Natalie shot in the head in their bedroom. Paramedics arrived and pronounced Natalie dead. Petitioner stated that he had been watching movies with his daughter, B., in the living room when B. had fallen asleep. Petitioner then claimed to have gone into to the bedroom, had sex with his wife, and returned to the living room to get a glass of water. He claimed that while he was going to the living room to get the water he heard a gunshot, and when he returned to the bedroom he found Natalie dead.

Over the course of the investigation, the Chandler police found ammunition matching the type with which the gun had been loaded, and which Petitioner had denied possessing, in his closet. They reconstructed the shooting three times and concluded that the wound was not self-inflicted. They learned that Natalie had filed for divorce and that the lawyer who had served the divorce papers on Petitioner had noted Petitioner's hostility and spoken to Natalie about whether she was in danger. The autopsy revealed bruising that suggested that Natalie had not died immediately but had been held down for several minutes after being shot while she choked on her own blood.

On May 2, 2000, Petitioner was found guilty of premeditated first degree murder. (Doc. 15-1, Ex. B). After he was granted postconviction relief by the Arizona Court of Appeals, he was given a new trial, where he was found guilty of second degree murder, a lesser included offense of the original charge, and sentenced to 22 years in prison. (Doc. 18-2, Ex. EE at 10, ¶ 27; Doc. 15-1, Exs. F, G).

On July 10, 2006, Plaintiff filed a direct appeal to the Arizona Court of Appeals, raising six grounds for relief not relevant to the current petition. (Doc. 17-9, Ex. BB). The appeal was denied, and Petitioner did not seek review in the Arizona Supreme Court. (Doc. 18-2, Ex. EE). On May 1, 2008, Petitioner, acting through counsel, filed a petition for postconviction relief pursuant to Arizona Rule of Criminal Procedure 32.1 in Maricopa County Superior Court. (Doc. 18-4, Ex. MM). There, Petitioner raised two grounds for relief, namely that 1) Petitioner was denied effective assistance of counsel at the supplemental briefing stage of his trial, and 2) the sentencing court had violated Arizona law when it issued a correcting minute entry reducing Petitioner's credited pre-sentence incarceration from

2,791 days to 2,376 days. (Doc. 18-4, Ex. MM). The trial court denied the petition on the merits. (Doc. 18-6, Ex. PP). Both the Arizona Court of Appeals and the Arizona Supreme Court denied review. (Doc. 18-6, Ex. SS; Doc. 18-7, Ex. UU).

Petitioner filed his pro se federal habeas corpus petition on February 23, 2011. (Doc. 7). In it, he alleges the same two grounds for relief that he pursued in his Rule 32 proceedings, namely 1) Petitioner was denied effective assistance of counsel at the supplemental briefing stage of his trial, and 2) the trial court erred when it amended Petitioner's pre-sentence incarceration credit.

## DISCUSSION

### I.     Legal Standard

The writ of habeas corpus affords relief to persons in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241(c)(3) (2006). Habeas review is not available "to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). The writ may be granted by "the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). Review of Petitions for Habeas Corpus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C. § 2244 *et seq.* (2006).

#### A.     Statute of Limitations under AEDPA

Under AEDPA, petitions for habeas corpus are governed by a one-year statute of limitations. *See Pace v. DiGuglielmo*, 544 U.S. 408, 410 (2005) (AEDPA "establishes a 1-year statute of limitations for filing a federal habeas corpus petition") (citing 28 U.S.C. § 2244(d)(1)). The limitation period begins to run when the state conviction becomes final—either "upon 'the conclusion of direct review or the expiration of the time for seeking such review.'" *White v. Klitzkie*, 281 F.3d 920, 923 (9th Cir. 2002) (quoting 28 U.S.C. § 2244(d)(1)(A)).

#### B.     Exhaustion of State Procedures

Habeas relief is not available to petitioners who do not properly exhaust their state

court procedural remedies prior to filing their federal petitions. 28 U.S.C. § 2254(b)(1). To satisfy the exhaustion requirement, a petitioner must give state courts the opportunity to pass upon and correct alleged violations of the prisoner's federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971)); *see Coleman v. Thompson*, 501 U.S. 722, 731 (1991) (holding that "a state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims") (citations omitted).

To provide the state with the necessary opportunity to review the claim, a petitioner must fairly present the claim in each appropriate state court. A claim is not fairly presented unless a petitioner "explicitly indicated" that "the claim was a *federal* one" in the state court litigation. *Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000), *as amended*, 247 F.3d 904 (9th Cir. 2001) (emphasis in original). A petitioner explicitly indicates that a claim is federal by including "reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." *Gray v. Netherland*, 518 U.S. 152, 162–63 (1996). A petitioner does not fairly present a state court with a federal claim merely by including "general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial." *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999) (citing *Gray*, 518 U.S. at 162–63).

## C.   Procedural Default

Habeas review is also not available for claims that have been procedurally defaulted. A claim may be procedurally defaulted in one of two ways. First, a claim is procedurally defaulted when it was raised in state court, but the state court denied relief based upon "an independent and adequate state procedural rule." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Second, claims that were not exhausted in state court are procedurally defaulted if the district court determines that a return to state court would be futile because procedural rules would eliminate "the likelihood that a state court will accord the habeas petitioner a hearing on the merits of the claim." *Harris v. Reed*, 489 U.S. 255, 268–70 (1989) (O'Connor, J., concurring). A federal court may only hear a claim that has been procedurally defaulted

1   if a petitioner "can demonstrate cause for the default and actual prejudice as a result of the
2   alleged violation of federal law, or demonstrate that failure to consider the claims will result
3   in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

4           **D.**    **Standard of Review**

5        A federal court reviewing a habeas petition can only reverse those decisions of a state
6   court that were "contrary to, or involved an unreasonable application of" clearly established
7   federal law. *Williams v. Taylor*, 529 U.S. 362, 391 (2000). Clearly established federal law
8   consists of "the governing principle or principles set forth by the Supreme Court at the time
9   the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003) (citing
10  *Bell v. Cone*, 535 U.S. 685, 698 (2002)). Habeas is not granted merely when a federal court
11  disagrees with a state court's constitutional interpretation: "the most important point is that
12  an *unreasonable* application of federal law is different than an *incorrect* application of
13  federal law." *Williams*, 529 U.S. at 410 (emphasis in original). A state court decision is
14  contrary to clearly established federal law when it "arrives at a conclusion opposite to that
15  reached by the Supreme Court on a question of law." *Taylor v. Lewis*, 460 F.3d 1093, 1097
16  n.4 (9th Cir. 2006) (citing *Williams*, 529 U.S. at 405–06). A state court involves an
17  unreasonable application of clearly established federal law when it "correctly identifies a
18  governing rule but applies it to a new set of facts that is objectively unreasonable." *McNeal
19  v. Adams*, 623 F.3d 1283, 1288 (9th Cir. 2010). When applying these standards, a habeas
20  court "should review the last reasoned decision by a state court." *Robinson v. Ignacio*, 360
21  F.3d 1044, 1055 (9th Cir. 2004).

22  **II.**    **Discussion**

23       The R & R recommends denying Ground Two because it alleges only errors of state
24  law, and recommends denying Ground One on the merits. Petitioner has filed a general
25  objection based upon the allegation that he did not receive a timely copy of Respondent's
26  Answer, and has made further objections to Magistrate Judge Burns's analysis on both
27  claims. This Court has conducted a *de novo* review, and adopts Magistrate Judge Burns's R
28  & R in part and rejects it in part. The following discussion addresses Petitioner's objections

1  in turn.

2       **A.**     **Failure to Receive the Response**

3         After the R & R was issued, Petitioner filed a "Motion to Strike Magistrate's Report

4  and Recommendation" based upon Respondent's alleged failure to provide Petitioner with

5  a copy of its Answer. On February 27, Respondent stated that it had mailed the Answer to

6  Petitioner, but for convenience sake it provided him with another copy, and stated that it had

7  no objection to allowing Petitioner additional time to file his objections to the R & R. (Doc.

8  22). Before the Court could rule on Petitioner's motion, he filed a timely objection, and then

9  filed a supplement and an errata one week later. (Docs. 24, 25). Because of the apparent

10  confusion regarding Petitioner's access to the Answer, this Court has considered thoroughly

11  all of the material submitted by Petitioner, including material that would otherwise be

12  untimely. Petitioner has thereby suffered no harm if, in fact, there was a delay in providing

13  him with the Answer.

14       **B.**     **Ground Two**

15         Magistrate Judge Burns recommended dismissing Claim Two because "federal habeas

16  corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

17  In his objections, Petitioner objects by arguing that the claim was made under the Due

18  Process clause, alleging that he was denied notice and a hearing when the court adjusted the

19  length of his presentence credit.[1] *See Matthews v. Eldridge*, 424 U.S. 319 (1976). Ground

20  Two relies on a state law argument, namely that "the State cannot correct an illegally lenient

21  sentence in absence of an appeal or cross-appeal by the state." (Doc. 7 at 7). The fact that

22  Petitioner makes "general appeals to broad constitutional principles" by referring in the

23  Ground's title to "the guarantee of Due Process by abuse of discretion" does not transform

24

25  _____

   [1] Petitioner continuously refers to the trial court "resentenc[ing] him" or "alter[ing] the

26  sentence." (Doc. 24 at 8). In fact, the trial court did not alter the sentence, which remained

27  at 22 years. The court corrected the number of days that Petitioner received for his presentence incarceration, because its original calculation had been in error, as Petitioner

28  does not deny.

it into a federal claim. *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999). Moreover, this claim was never framed as a federal one during his state court proceedings: he did not raise any claim comparable to Ground Two in his direct appeal, and he framed the question as one of state law in his Rule 32 proceeding. (Doc. 18-6, Ex. MM). Petitioner never "explicitly indicated" to the state courts that his claim contesting the minute entry "was a *federal* one." *Lyons*, 232 F.3d at 669. Moreover, this unexhausted claim is procedurally defaulted; Petitioner cannot now return to state court and file a Rule 32 petition claiming that his federal due process rights were violated, because the time to file a Rule 32 petition has long passed. *See* ARIZ. R. CRIM. P. RULE 32.4; *Harris*, 489 U.S. at 268–70.

## C.    Ground One

### 1.    Background

Petitioner further claims that Magistrate Judge Burns misapplied applicable Sixth Amendment case law in denying Claim One.[2] Petitioner's trial began on August 8, 2005. (Doc. 15-5, Ex. K). Closing arguments were held on August 25, 2005. (Doc. 17-5, Ex. U). On August 30, 2005, at 1:30 p.m., the jurors submitted a note to the judge stating that they were at an impasse, and requesting access to letters from Petitioner to his daughter B. that had been referenced during the trial.[3] (Doc. 15-1, Ex. E). The trial judge instructed the jury to keep deliberating, and to consider only the evidence that had been admitted at trial. (*Id.*). At 3:20 p.m., the jury sent another letter, which read, "we are at an impasse as to agreement on a verdict and have exhausted discussion possibilities." (Doc. 17-7, Ex. W at 3:8–10). The judge proposed a number of possible options to the attorneys, including declaring a mistrial,

---

[2] Respondent argues that Ground One has not been exhausted and is procedurally defaulted because Petitioner styled it as a Fifth Amendment claim, rather than a Sixth Amendment claim as he did in his state court proceedings. (Doc. 15 at 19). Since Petitioner is an inmate proceeding pro se, his pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). The Court interprets Ground One as a Sixth Amendment Claim, which Respondent acknowledges Petitioner has exhausted. (Doc. 15 at 19 n.10).

[3] The letters had not been admitted into evidence.

asking the jury to leave for the day and return in the morning, or summoning the jury and asking the presiding juror if there are "any issues we can help with." (Doc. 17-7, Ex. W at 3:20–21). The judge noted that if the jury identified an issue, he would permit parties to deliver twenty minutes of supplemental argument on that issue alone. Petitioner's attorney stated, "No. I don't have that kind of confidence in myself." (*Id.* at 5:2–3). Petitioner's attorney instead suggested giving a "dynamite instruction,"[4] and the State's attorney said, "Let's go ahead and declare a mistrial." (*Id.* at 7:12–13). The judge proceeded to call back the jury and asked them to continue to deliberate, stating that "you may wish to identify for the court and counsel which issues or questions or law or fact you would like counsel or the court to assist you with." (*Id.* at 11:19–21). He continued by stating that "[i]f it is reasonably probable that you could reach a verdict as a result of this procedure, it would be wise to give it a try." (*Id.* at 12:4–6). The court took a recess, and at 5:00 pm, the jury presented the following note:

> The impasse is not related to whether or not Natalie committed suicide. (We are all in agreement based on the evidence that she did not.) Our differences relate to whether David pulled the trigger. To assist us in resolving this difference, we'd like to have the following: any information relative to B.'s interview in N[orth] C[arolina], all the letters that David wrote to B. that were given to the Chandler Police Department by the McFarland family. We do not feel this request is unreasonable given the fact that both items were mentioned in the discussion in open court. And number two, [we] would also like clarification regarding the fingerprint lifted off the murder weapon. Were they found not to be David Kiehle's or were they inclusive to whether they were his?
> *Id.* at 13:22–14:11.

The trial judge told both attorneys that they would have twenty minutes to address the jury the next day. Petitioner's counsel stated that supplemental argument would be inappropriate because the jurors had asked to see inadmissible evidence, and "if the State starts intimating

---

[4] A "dynamite instruction," called an *Allen* charge in federal court, is a "supplemental jury instruction given by the court to encourage a deadlocked jury, after prolonged deliberations, to reach a verdict." *Black's Law Dictionary* 87 (9th ed. 2009). *See Allen v. United States*, 164 U.S. 492 (1896).

1  or trying to draw an inference to what is in [the letters] it's objectionable." (Doc. 17-7, Ex.

2  W at 15:25–16–1). The judge responded that they would reconvene the next day and that

3  each side would have twenty minutes to address the jury. (*Id.* at 17:3–7).

4      The next day, Petitioner's counsel filed a motion for a mistrial, which the court

5  denied. (Doc. 15-1, Ex. E). The state's attorney gave supplemental argument in which he

6  argued, among other things, that an 11-year old child such as B. could not have caused the

7  bruising on Natalie's body. Petitioner's attorney did not address the jury, but made an oral

8  motion for a mistrial based upon the State's attorney's supplemental argument. (Doc. 17-7,

9  Ex. X, at 14:3–10). The jury returned with a verdict that Petitioner was not guilty of first

10  degree murder but was guilty of second degree murder. (Doc. 17-7, Ex. Y at 3).

11      Before analyzing the R & R and Petitioner's objections to it, it is important to clarify

12  that Petitioner is not making a claim that the judge's request for supplemental argument

13  constituted coercion. *See*, *e.g.*, *U.S. v. Evanston*, 651 F.3d 1080 (9th Cir. 2011) ("Because

14  the parties were alerted to the factual issues dividing the jury, they could tailor their

15  arguments accordingly."). Although the coercion argument made up the substance of

16  Petitioner's initial motion for a mistrial, it was not included in his original direct appeal, was

17  not mentioned in his Rule 32 proceeding, and has not been mentioned in this habeas

18  proceeding. Petitioner adopts some of the argument from the motion for a mistrial in his

19  objection, writing, for example, that "the trial court then . . . allowed the attorneys to make

20  a new round of closing argument to the jury based on the revealed subjective thought process

21  of the jury." (Doc. 24 at 9). Nevertheless, the only claim cognizable in his habeas proceeding

22  is that he was denied his right to be effectively represented by counsel at the supplemental

23  briefing. (Doc. 7 at 6). To the extent that he presents argument that the judge's actions

24  constituted coercion, these arguments were never presented to the Arizona Court of Appeals

25  as a federal claim, and therefore have not been exhausted, and have subsequently been

26  procedurally defaulted.

27      **2.**    **Merits**

28      Turning to the merits of Petitioner's Sixth Amendment claim, Petitioner claims that

1    he was denied the effective assistance of counsel both in the general test applied under

2    *Strickland v. Washington*, 466 U.S. 668 (1984), and the narrow exception detailed in *U.S. v.*

3    *Cronic*, 466 U.S. 648 (1984). Under *Strickland*, relief may be granted only when a petitioner

4    shows both that "counsel's performance was deficient" and that "the deficient performance

5    prejudiced the defense." *Strickland*, 466 U.S. at 687. Under *Cronic*, a petitioner need not

6    show that a deficient performance prejudiced the result under three defined circumstances.

7    *Cronic*, 466 U.S. at 659–60.

8         Parties agree that the trial court's denial of Petitioner's Rule 32 petition constitutes

9    the last reasoned decision on Petitioner's *Strickland* and *Cronic* claims. (Doc. 18-6, Ex.

10   PP).The trial court found that Petitioner's attorney had not performed deficiently because it

11   was "patently obvious" that waiving the supplemental argument was "part of Defendant's

12   trial tactics," and that having seen the entire trial, "no one could deem the representation

13   deficient." (Doc. 18-6, Ex. PP). Further, the trial court concluded that Petitioner had not been

14   prejudiced, because it was clear from the jury's note that it had ruled out suicide, and "[t]he

15   evidence clearly showed that the young girl was not the shooter." (*Id.*). The trial court found

16   that *Cronic* did not apply because, although Petitioner's lawyer did not make supplemental

17   argument, he "was never absent and was never prevented from assisting Defendant at any

18   stage of the trial." (Doc. 18-6, Ex. PP). Magistrate Judge Burns found that this decision was

19   not an unreasonable application of *Cronic*, because the Supreme Court has never held that

20   the unique factual circumstance of a supplemental briefing in response to a jury note is a

21   "critical stage," and that the trial court's *Strickland* analysis was reasonable. (Doc. 19 at

22   14–18).

23        Petitioner's principal objection is that the deferential standard of review under

24   AEDPA is not appropriate here because the trial court's order denying the Rule 32 petition

25   did not cite to *Strickland* and did not analyze all three circumstances under which *Cronic*

26   may afford relief. (Doc. 24 at 10). In the Ninth Circuit, the deference ordinarily applied under

27   AEDPA is relaxed in circumstances where a "state court does not furnish a basis for its

28   reasoning," because in those circumstances "federal courts are left simply to speculate about

1   what 'clearly established law' the state court might have applied." *Delgago v. Lewis*, 223

2   F.3d 976, 982 (9th Cir. 2000) (overruled in part by *Lockyer v. Andrade*, 538 U.S. 63, 74–77

3   (2003)).

4                   **a.    *Strickland***

5        Although the trial court did not cite directly to *Strickland*, it analyzed Petitioner's

6   ineffective assistance claim under the two well-understood *Strickland* prongs: whether

7   Petitioner's attorney's performance was deficient, and whether Petitioner was prejudiced by

8   that deficiency. (Doc. 18-6, Ex. PP). The Court does not need to "speculate" about which

9   federal law the trial court applied, and heightened AEDPA scrutiny is appropriate. *Delgago*,

10  223 F.3d at 982. Moreover, the trial court's finding that *Strickland* relief is not available

11  because Defendant was not prejudiced once it became clear that the jury had ruled out his

12  theory of the case was correct under any standard of review. This Court has reviewed the trial

13  transcript and found that there was no evidence presented at trial from which a reasonable

14  jury could have found that B. shot her mother. (Docs. 15–17). Petitioner cites to *Martin v.

15  Rose*, 744 F.2d 1245, 1250 (6th Cir. 1984) in which the Sixth Circuit held that refusing to

16  participate in a trial in hopes of winning on appeal was grounds for finding that an attorney's

17  performance was deficient, particularly "since the attorney was aware of a strong defense that

18  he could present without compromising his earlier motions." *Martin* is not a Supreme Court

19  case, so disagreeing with it does constitute an unreasonable application of federal law.

20  Moreover, Petitioner has not alleged that his attorney could have mounted a strong defense

21  had he engaged in supplemental argument. Finally, even were the attorney's performance

22  deficient, Petitioner has made no argument to counter the trial court's finding that he was not

23  prejudiced by his attorney's action. Petitioner is not entitled to relief under *Strickland*.

24                   **b.    *Cronic***

25        Under *Cronic*, a Petitioner need not show that he was prejudiced under the following

26  three narrow circumstances: 1) when a defendant is "denied counsel at a critical stage of his

27  trial," 2) when "counsel entirely fails to subject the prosecution's case to meaningful

28  adversarial testing," and 3) when circumstances are present such that "although counsel is

available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide assistance is so small that a presumption of prejudice is appropriate." 466 U.S. at 659–60. In its minute entry on Petitioner's Rule 32 petition, the trial court judge discussed each of the first two prongs of *Cronic*, noting that Petitioner's attorney "was never prevented from assisting Defendant at any stage of the trial" and that he "subjected the State's case's case to vigorous adversarial testing." (Doc. 18-6, Ex. PP). Neither of these findings is incorrect even under de novo review, let alone the deferential standard of AEDPA. *Williams*, 529 U.S. 391.[5] *Cronic*'s first prong does not apply when an attorney is present and chooses not to speak, and its second prong is not to be parsed among various stages the trial. *See Bell v. Cone*, 535 U.S. 685, 696–97 (2002) (explaining that *Cronic*'s first prong applies only to defendants who have "actually or constructively been denied counsel by government action" and that the second does not apply when a petitioner's argument "is not that his counsel failed to oppose the prosecution throughout the sentencing proceeding as a whole, but that his counsel failed to do so at specific points"); *see also Rogers v. Marshall*, No. 10-55816 VAP-MLG, 2012 WL 1739703, at *2 (9th Cir. May 17, 2012) (holding that *Cronic* is applicable "when *the trial court denied* his timely request for representation") (emphasis added); *Florida v. Nixon*, 543 U.S. 175, 192 (2004) (holding *Cronic* is not applicable when an attorney presents no case at the guilt phase of trial and

---

[5] In the R & R, Magistrate Judge Burns found that *Cronic* did not apply because "[t]he United States Supreme Court has not extended *Cronic*'s first category (denial of counsel at a critical stage) to the specific factual circumstances presented here—the decision to forego supplemental closing argument in response to a jury's question." (Doc. 19 at 14). After the R & R was issued, the Ninth Circuit held that whether any particular stage of a trial is "critical" for purposes of *Cronic* may be decided on habeas review absent controlling Supreme Court authority. *See Rogers v. Marshall*, No. 10-55816 VAP-MLG, 2012 WL 1739703, at *5 (9th Cir. May 17, 2012) (finding that a post-verdict motion for a new trial is a "critical stage" even though "the Supreme Court has . . . never squarely addressed whether a post-verdict motion for a new trial is one of those stages"). The trial court's original ruling, that Petitioner was not denied the right to counsel because his counsel was present and chose not to speak, is consistent with Supreme Court precedent and not contrary to federal law. *See Bell v. Cone*, 535 U.S. 685, 696–97 (2002).

1   focuses instead on the sentencing phase, because he may be "attempting to impress the jury

2   with his candor and his unwillingness to engage in a useless charade").

3       The trial court did not, however, discuss the third prong of *Cronic* in denying

4   Petitioner's Rule 32 motion. (Doc. 18-6, Ex. PP). Moreover, Respondent did not address

5   *Cronic*'s third prong in its Answer, and the R & R does not contain any discussion of

6   *Cronic*'s third prong. Since there is no basis in the state court record for analyzing

7   Petitioner's claim under the third prong of *Cronic*, the Court is "left with no alternative but

8   to review independently" that claim. *Delgago*, 223 F.3d at 982. Although the Court reviews

9   the record independently, "we still defer to the state court's ultimate decision." *Pirtle v.*

10  *Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

11      In *Cronic*, the Court wrote that a defendant need not prove prejudice under

12  circumstances where, "although counsel is available to assist the accused during trial, the

13  likelihood that any lawyer, even a fully competent one, could provide effective assistance is

14  so small that a presumption of prejudice is appropriate without inquiry into the actual

15  conduct of the trial." 466 U.S. 659–60. It suggested that such a circumstance had been

16  present in the well-known trial of the defendants often referred to as the Scottsboro Boys.

17  *Powell v. Alabama*, 287 U.S. 45 (1932). In that case, an out-of-state lawyer unfamiliar with

18  a complex criminal case had been assigned on the day of the trial to represent defendants

19  who were "young, ignorant, illiterate, surrounded by hostile sentiment, haled back and forth

20  under guard of soldiers, charged with an atrocious crime regarded with especial horror in the

21  community where they were to be tried," and who were thereby "put in peril of their lives

22  within a few moments after counsel for the first time charged with any degree of

23  responsibility began to represent them." *Cronic*, 466 U.S. at 660. Under such extreme trial

24  circumstances, "the likelihood that counsel could have performed as an effective adversary

25  was so remote as to have made the trial inherently unfair." *Id.* at 660–61. In *Cronic* itself, the

26  Court found these special circumstances had not been met when the "court appointed a young

27  lawyer with a real estate practice to represent respondent, but allowed him only 25 days for

28  pretrial preparation, even though it had taken the Government over four and one-half years

to investigate the case and it had reviewed thousands of documents during that investigation." *Cronic*, 466 U.S. at 649.

The third prong of *Cronic*, therefore, while technically an ineffective assistance of counsel claim, may be better understood as a claim that the defendant's trial was so fundamentally flawed that no effective assistance was possible. *Cronic*, 466 U.S. at 661 (the third prong applies in "a case in which the surrounding circumstances made it so unlikely that any lawyer could provide effective assistance that ineffectiveness was properly presumed without inquiry into actual performance at trial"). Relief under the third prong of *Cronic* is granted only in extreme circumstances. For example, a defendant who was tried by a jury on which seven of the twelve jurors had recently sat on a jury that had convicted his co-conspirators was entitled to relief because the fact that the jurors had heard and ruled on the other case made "the adversary process itself presumptively unreliable." *Quintero v. Bell*, 368 F.3d 892, 893 (6th Cir. 2004), *cert. denied*, 544 U.S. 936. When a trial court prevents an attorney from engaging in the adversarial process, for example by prohibiting him from cross-examining a witness that has implicated his client, the third prong of *Cronic* may be implicated, because the error is "of the first magnitude and no amount of showing of want of prejudice would cure it." *U.S. v. Bagley*, 473 U.S. 667, 677 (1985) (citing *Cronic*, 466 U.S. at 659).

Cases in which there may have been some error do not necessarily give rise to relief under the third prong of *Cronic*. Relief is not available, for example, when a judge fails to inquire as to whether petitioner's trial lawyer is operating under a conflict of interest. *Mickens v. Taylor*, 535 U.S. 162, 173 (2002) ("The trial court's awareness of a potential conflict neither renders it more likely that counsel's performance was significantly affected nor in any other way renders the verdict unreliable."). Demonstrating that an attorney was mentally ill is not sufficient grounds for imposing *Cronic*'s presumption of prejudice. *Smith v. Ylst*, 826 F.2d 872, 867 (9th Cir. 1987) ("Although there is merit to the argument that a mentally unstable attorney may make errors of judgment . . . it is reasonable to treat such cases under the general rule requiring a showing of prejudice.").

Petitioner argues that the circumstances of the supplemental briefing created a situation in which no lawyer, even a skilled one, could provide him effective assistance of counsel. (Doc. 24 at 12). As noted above, the Ninth Circuit has recently issued a decision regarding judicial coercion in circumstances markedly similar to Petitioner's trial. In *U.S. v. Evanston*, 651 F.3d 1080, 1082 (9th Cir. 2011), the court considered the following question:

> In a case of first impression, we examine whether a district court may, over defense objection and after the administration of an unsuccessful *Allen* charge, inquire into the reasons for a trial jury's deadlock and then permit supplemental argument focused on those issues, where the issues in dispute are factual rather than legal. We conclude that allowing such a procedure in a criminal trial is an abuse of the discretion accorded district courts in the management of jury deliberations.

In *Evanston*, as in Petitioner's trial, the jury twice wrote that it was deadlocked, and the trial court inquired as to the status of the jury's deliberation before requesting supplemental argument. *Id.* at 1088. Here, however, Petitioner does not challenge the judge's actions directly, and were he to, such a challenge would fail. As the court in *Evanston* noted, the Arizona Rules of Criminal Procedure explicitly allow for instructions such as the one issued here. *See* Ariz. R. Crim. P. 22.4. The Ninth Circuit in *Evanston* went out of its way to note that "Arizona's rule—the first to explicitly allow for supplemental closing arguments of this nature—was adopted as an alternative means of addressing jury questions and impasse." 651 F.3d at 1089. The Ninth Circuit explicitly approved of the Arizona state rule, even while stating that federal criminal courts may not adopt the same rule. *Id.* ("[E]ach of these states has had the benefit of the formal rulemaking process to weigh the benefits and risks of allowing supplemental argument.").

More importantly, however, Petitioner is not challenging the supplemental briefing process directly. Instead he argues that by adopting the process—explicitly allowed for by the Arizona Rules of Criminal Procedure—the trial court transformed the trial into one where "the likelihood that counsel could have performed as an effective adversary was so remote as to have made the trial inherently unfair." *Cronic*, 458 at 660–61. The State's attorney, when provided the opportunity to deliver a supplemental briefing, acknowledged that the

fingerprints on the gun were not David's, stated that the evidence showed that B. adored her mother, and suggested that an 11-year-old could not have caused the bruising found on Natalie's throat and under her skin. (Doc. 17-7, Ex. X at 5–9). The court offered Petitioner's attorney the same amount of time to rebut the prosecutor's statements. Even though the supplemental briefing took place after the parties knew some of the jury's decisions, nothing suggests that the opportunity for a fully competent attorney to provide effective assistance was "so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." *Cronic*, 466 U.S. at 660. Petitioner's attorney could have emphasized that the fingerprints were not David's, could have sought to implicate B., could have suggested that an unknown party was in the house, or could have merely expounded on the standard of reasonable doubt. Indeed, in his Rule 32 action, Petitioner wrote that his attorney "had to rebut this argument and failed to do so entirely." (Doc. 18-6 at 5). There is no question that once the jury had rejected Petitioner's theory of the case, his attorney's situation was difficult. An attorney faced with a difficult argument, however, is in a materially different situation than the attorney appointed to represent the Scottsboro Boys on the eve of their trial. Petitioner was not constructively denied counsel to a degree whereby prejudice can be presumed. Indeed, as the trial court noted, Petitioner's counsel's "conduct of the trial exceeded the standard of practice for defense attorneys." (Doc. 18-6, Ex. PP). Claim One, and therefore the entire petition, is denied.

### D.    Certificate of Appealability

When a petition for habeas corpus is rejected on the merits, a certificate of appealability will only issue if the petitioner can demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). There is no debate that Ground Two is a purely state claim, and that the state court's dismissal of Petitioner's *Strickland* claim under Ground One was not directly contrary to federal law. As noted above, only the first two prongs of Petitioner's *Cronic* claim were addressed at the state court level, but there too, no reasonable jurist could find that the state court's opinion was directly contrary to federal law. Since the

third prong of Petitioner's *Cronic* claim is subject to a lesser degree of review, and in light of the Ninth Circuit's recent ruling on supplemental briefing, the Court finds that a reasonable jurist could find it "debatable" that Petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner is therefore granted a Certificate of Appealability on one issue: whether, during supplemental briefing, the trial became one "in which the surrounding circumstances made it so unlikely that any lawyer could provide effective assistance that ineffectiveness was properly presumed without inquiry into actual performance at trial." *Cronic*, 466 U.S. at 661.

## CONCLUSION

As Magistrate Judge Burns noted in the R & R, Petitioner's second claim is a purely state issue, and his first claim was properly decided by the trial judge in his order denying Petitioner's Rule 32 proceeding. Since the trial judge did not address whether the supplemental briefing process resulted in a constructive denial of counsel under *Cronic*'s third prong, however, that question is reviewed under a less stringent standard by this Court, which nevertheless finds that Petitioner was not denied his constitutional right to counsel. He is granted a Certificate of Appealability only on the limited issue of whether the supplemental briefing denied him of his right to counsel under the third prong of *Cronic*.

**IT IS THEREFORE ORDERED:**

1.     Petitioner's Amended Petition for the Writ of Habeas Corpus (Doc.7) is **denied**.

2.     Petitioner's Motion for Cause Respondents to Serve Answer Pleading on Petitioner (Doc. 21)  is **dismissed as moot**.

3.     The Report and Recommendation (Doc. 19) is **accepted in part and rejected in part**.

4.     Petitioner is issued a Certificate of Appealability for the limited issue of whether the supplemental briefing denied him his Sixth Amendment rights because it presented a special circumstance where "the likelihood that any lawyer, even a fully competent one, could provide assistance is so small that a presumption of prejudice is

1    appropriate." *Cronic*, 466 U.S. at 659–660.

2          DATED this 30th day of May, 2012.

3
4                           *A. Murray Snow*
                            _____
5                              /G. Murray Snow
                               United States District Judge
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28